[This opinion has been published in *Ohio Official Reports* at 69 Ohio St.3d 89.]

OHIO CIVIL RIGHTS COMMISSION, APPELLEE AND CROSS-APPELLANT, *v.*

DAVID RICHARD INGRAM, D.C., INC., APPELLANT AND CROSS-APPELLEE.

[Cite as *Ohio Civ. Rights Comm. v. David Richard Ingram, D.C., Inc.*,

1994-Ohio-515.]

*Ohio Civil Rights Commission—Common pleas court has jurisdiction to modify order of commission—Proper measure of damages in employment discrimination case—Where amount of backpay that would have been received by victim of employment discrimination is unclear, ambiguities are resolved against discriminating employer—Unemployment compensation benefits are not deducted from a back pay award made pursuant to R.C. 4112.05(G).*

1. Pursuant to R.C. 4112.06, a common pleas court has jurisdiction to modify an order of the Ohio Civil Rights Commission.

2. Prejudgment interest on a back pay award that is calculated from the time the aggrieved party was discriminated against is a proper measure of damages in an employment discrimination case.

3. Where the amount of back pay that would have been received by a victim of employment discrimination is unclear, any ambiguities should be resolved against the discriminating employer.

4. Unemployment compensation benefits are not "interim earnings" and should not be deducted from a back pay award made pursuant to R.C. 4112.05(G). (*State ex rel. Guerrero v. Ferguson* [1981], 68 Ohio St.2d 6, 22 O.O.3d 98, 427 N.E.2d 515, limited.)

(No. 92-2059—Submitted December 8, 1993—Decided April 27, 1994.)

APPEAL and CROSS-APPEAL from the Court of Appeals for Wayne County, No. 2713.

_____

{¶ 1} Vicki J. Pelfrey began employment with appellant and cross-appellee, David Richard Ingram, D.C., Inc., in August 1979 as a chiropractor assistant. Over the years of her employment with appellant, her duties included escorting patients from the waiting room to Ingram's table, acting as receptionist, and performing some of the insurance, x-ray and payroll work. During her employment with appellant, Pelfrey was given raises every six months. On September 9, 1983, Pelfrey's employment was terminated by appellant. At that time, her annual salary was $16,000, and her last salary increase had been $2,000, approximately four months prior to her discharge.

{¶ 2} On September 27, 1983, Pelfrey filed a sworn charge before appellee and cross-appellant, the Ohio Civil Rights Commission, alleging that she had been discharged from her employment due to unlawful sex discrimination. The commission investigated the allegations and issued a formal complaint against appellant, whereupon a hearing was held before a hearing examiner for the commission. In an order issued November 14, 1985, the commission found that appellant had discriminated against Pelfrey on the basis of her sex, and ordered appellant to offer Pelfrey reemployment and back pay in an amount that "she would have received had she been employed by [appellant] on September 9, 1983 through the date of [appellant's] offer of reemployment, *** less Complainant's interim earnings and *** including interest at the maximum annual rate allowable by law."

{¶ 3} After her discharge, Pelfrey received unemployment compensation between October 1983 and June 1984 in the amount of $5,920. After attending Wooster Business College in 1984, Pelfrey worked for Steiner Oil Field Electric Company during part of 1984 and 1985. On March 30, 1985, Pelfrey obtained a job with the United States Postal Service at a rate in excess of what she would have earned with appellant.

{¶ 4} Meanwhile, in late 1985, appellant filed a petition for judicial review of the commission's order before the court of common pleas. In a judgment entry dated April 28, 1986, the trial court affirmed the commission's decision. No further appeal was taken from this decision. Then, on May 12, 1986, appellant formally offered Pelfrey reemployment.

{¶ 5} On February 26, 1991, the commission filed a petition for an order of enforcement with the court of common pleas on the grounds that appellant had failed to comply with the back pay order of the commission from November 1985. In a judgment entry dated January 10, 1992, the trial court modified the commission's back pay order by shortening the time period over which Pelfrey would be entitled to back pay. Instead of calculating the award of back pay up to the date appellant offered Pelfrey reemployment, the trial court held that "[l]ogic demands that when a person receiving back pay obtains higher paying employment, the obligation for awarding back pay should cease, since the victim's 'economic position' can no longer be restored by providing back pay. Further, since R.C. 4112.05(G) and the November order mandate that interim earnings of Pelfrey must be deducted, Ingram could completely mitigate *his* losses by holding out on his offer of re-employment during the period Pelfrey held a higher paying job." (Emphasis *sic*.) Thus, the trial court calculated the back pay award to end on the date when Pelfrey obtained a job with the United States Postal Service. Appellant had asked that the later date on which he finally offered reemployment should be used, so that he would benefit from a setoff of the much larger salary Pelfrey received from the Postal Service. The court further held that "unemployment compensation is not a proper deduction as 'interim earnings' in the present case." Also, the court awarded prejudgment interest beginning on the date when Pelfrey was unlawfully terminated from her employment with appellant.

{¶ 6} Upon appeal, the court of appeals affirmed in part and reversed in part. The appellate court affirmed the trial court's decision in all respects except

for the issue concerning the deductibility of unemployment compensation benefits from the back pay award. In this regard, the court of appeals relied on this court's decision in *State ex rel. Guerrero v. Ferguson* (1981), 68 Ohio St.2d 6, 22 O.O.3d 98, 427 N.E.2d 515, and held that the trial court erred in failing to deduct Pelfrey's unemployment benefits from her back pay award.

{¶ 7} The cause is now before this court pursuant to the allowance of a motion and a cross-motion to certify the record.

_____

*Lee Fisher*, Attorney General, and *Joseph D. Rubino*, Assistant Attorney General, for appellee and cross-appellant.

*Martin, Pergram, Browning & Parker Co., L.P.A.*, and *Dennis L. Pergram*, for appellant and cross-appellee.

*Spater, Gittes, Schulte & Kolman*, *Frederick M. Gittes*, *Kathaleen B. Schulte* and *Michael S. Kolman*, urging affirmance on appeal and reversal on cross-appeal for *amici curiae*, 9 to 5; National Association of Working Women; International Union, Automobile, Aerospace and Agricultural Implement Workers of America (UAW), Region 2; Committee Against Sexual Harassment; Ohio NOW Education and Legal Fund; Ohio Employment Lawyers Association; Ohio State Legal Services Association; Ohio Federation of Business and Professional Women; National Conference of Black Lawyers; Police Officers for Equal Rights; and Ohio Human Rights Bar Association.

_____

**A. WILLIAM SWEENEY, J.**

{¶ 8} With respect to the first issue on appeal before this court, appellant argues that the trial court did not have jurisdiction to deviate from the back pay period set forth in the commission's order of November 14, 1985. However, our review of R.C. 4112.06 leads us to conclude otherwise. R.C. 4112.06 provided in part:

"(A) *** the commission may obtain an order of court for the enforcement of its final orders, in a proceeding as provided in this section. Such proceeding shall be brought in the common pleas court of the state within any county wherein the unlawful discriminatory practice which is the subject of the commission's order was committed or wherein any respondent required in the order to cease and desist from an unlawful discriminatory practice or to take affirmative action resides or transacts business.

"(B) *** *The court *** shall have power to *** make and enter, upon the record* and such additional evidence as the court has admitted, *an order enforcing, modifying and enforcing as so modified*, or setting aside in whole or in part, *the order of the commission*." (Emphasis added.) (The current version of R.C. 4112.06[B] adds the power to remand.)

{¶ 9} The trial court modified the commission's order in a manner that not only complied with the foregoing statutory provisions, but was also fair to all parties. While the commission awarded Pelfrey back pay covering the period from when she was unlawfully discharged through the date she was offered reemployment by appellant, a subsequent intervening event, *i.e.*, Pelfrey's obtainment of a better paying job, rendered literal enforcement of the order unfair. Given the clear language of R.C. 4112.06(B) above, the trial court had both the jurisdiction and obligation to modify the commission's order as it did. Accordingly, we hold that pursuant to R.C. 4112.06, a common pleas court has jurisdiction to modify an order of the Ohio Civil Rights Commission, and we therefore affirm the judgment of the court of appeals below.

{¶ 10} The second issue raised on appeal concerns the propriety of the trial court's award of prejudgment interest on the back pay award. Appellant contends that where damages in an action are unliquidated, interest begins to run when there is a monetary judgment definite in amount. Since the definite amount of back pay due Pelfrey was not determined until the trial court judgment was issued on January

10, 1992, appellant argues that interest should not be assessed prior to that date. In support of its argument, appellant relies on *Cleveland Ry. Co. v. Williams* (1926), 115 Ohio St. 584, 155 N.E. 133.

{¶ 11} The commission contends that *Williams* is distinguishable from the cause *sub judice* because that case involved a personal injury award, whereas an employment discrimination award is designed to restore victims to the economic position that they would have enjoyed, but for the discrimination. See *Ohio Civ. Rights Comm. v. Lucas Cty. Welfare Dept.* (1982), 6 Ohio App.3d 14, 6 OBR 38, 451 N.E.2d 1246. *Amici curiae* submit that cases involving similar situations where prejudgment interest has been awarded in connection with pack pay determinations under Title VII of the Civil Rights Act of 1964 are also applicable here. See *Plumbers & Steamfitters Joint Apprenticeship Commt. v. Ohio Civ. Rights Comm.* (1981), 66 Ohio St.2d 192, 196, 20 O.O.3d 200, 202-203, 421 N.E.2d 128, 131, wherein we stated that "[i]n previous cases, however, we have determined that federal case law interpreting Title VII of the Civil Rights Act of 1964, Section 2000(e) *et seq.*, Title 42, U.S. Code, is generally applicable to cases involving alleged violations of R.C. Chapter 4112. *State ex rel. Republic Steel [Corp.] v. Ohio Civil Rights Comm.* (1975), 44 Ohio St. 2d 178 [73 O.O.2d 478, 339 N.E.2d 658] ***."

{¶ 12} The arguments raised and the cases cited by the commission and *amici* correctly illustrate the rationale and appropriateness of an award of prejudgment interest in employment discrimination cases. As noted by the United States Supreme Court in *Loeffler v. Frank* (1988), 486 U.S. 549, 557-558, 108 S.Ct. 1965, 1970-1971, 100 L.Ed.2d 549, 558-559:

{¶ 13} "[A]pparently all the United States Courts of Appeals that have considered the question agree[] that Title VII authorizes prejudgment interest as part of the backpay remedy in suits against private employers. This conclusion surely is correct. The backpay award authorized by { 706(g) of Title VII, as

6

amended, 42 USC { 2000e-5(g), is a manifestation of Congress' intent to make 'persons whole for injuries suffered through past discrimination.' *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 421 [95 S.Ct. 2362, 2373, 45 L.Ed.2d 280, 299] (1975). Prejudgment interest, or course, is 'an element of complete compensation.' *West Virginia v. United States*, 479 U.S. 305, 310 [107 S.Ct. 702, 706, 93 L.Ed.2d 639, 646] (1987)." (Footnotes omitted.)

{¶ 14} As the foregoing cases suggest, interest should begin to run on a back pay award under R.C. 4112.05(G) from the time at which the party was discriminated against, in order to restore victims to the economic position they would have been in had no discrimination occurred. To rule otherwise would in effect give the employer an interest-free loan until the damages are liquidated in an official determination. See *Clarke v. Frank* (C.A. 2, 1992), 960 F.2d 1146, 1153-1154.

{¶ 15} Therefore, we affirm the judgment of the court of appeals on this issue, and hold that prejudgment interest that is calculated from the time the aggrieved party was discriminated against is a proper measure of damages in an employment discrimination case.

{¶ 16} The third issue raised by appellant concerns the trial court's inclusion of salary increases in its calculation of Pelfrey's back pay award. Appellant argues that since the commission never expressly found that Pelfrey would have continued to receive salary increases had she not been fired, the trial court erred in calculating salary increases in the back pay award. Appellant further contends that the trial court erred in not deducting from the back pay award the $615 vacation pay that Pelfrey received, since there was no express finding by the commission that Pelfrey was entitled to vacation pay in addition to her regular salary.

{¶ 17} The commission's order does not support appellant's assertions. It specifically states that Pelfrey "received no reprimands or indications from [appellant] that she was performing less than satisfactorily," and that "[s]he

received periodic raises throughout her employment" with appellant. In addition, the commission ordered that Pelfrey be offered reemployment and "be paid at the wage scale she would have attained had she been employed by [appellant] on September 9, 1983 to the present[,] including all normal wage increments accruing during that period."

{¶ 18} While the latter-quoted passage from the commission's order was premised on Pelfrey's acceptance of reemployment, there is nothing in the order which negates the inclusion in back pay of normal salary increases in the event that Pelfrey declined reemployment. With regard to the $615 vacation pay, the appellate court noted that appellant had presented no evidence as to whether it was the usual practice of the office to compensate employees for unused vacation time. Under these circumstances, we are persuaded by the standard articulated by the Sixth Circuit United States Court of Appeals and relied on by the court of appeals which holds that "[a]ny ambiguity in what the claimant would have received but for the discrimination should be resolved against the discriminating employer." *Rasimas v. Michigan Dept. of Mental Health* (C.A. 6, 1983), 714 F.2d 614, 628. In addition, we are guided by the mandate of R.C. 4112.08 that "[t]his chapter shall be construed liberally for the accomplishment of its purposes ***." Thus, we hold that where the amount of back pay that would have been received by a victim of employment discrimination is unclear, any ambiguities should be resolved against the discriminating employer.

{¶ 19} In applying this standard to the instant cause, we affirm the judgment of the appellate court insofar as it upholds the trial court's calculation of Pelfrey's back pay award to include salary increases, with no deduction for the amount Pelfrey received from appellant for vacation pay.

{¶ 20} With respect to the issue on cross-appeal, the commission contends that unemployment compensation benefits should not be deducted as "interim

earnings" from a complainant's back pay award under R.C. 4112.05(G).[1]   The appellant counters that adoption of the commission's argument would make Pelfrey more than whole and would essentially result in awarding punitive damages against it.  Appellant relies on this court's decision in *State ex rel. Guerrero v. Ferguson* (1981), 68 Ohio St.2d 6, 22 O.O.3d 98, 427 N.E.2d 515, that a reinstated public employee who was wrongfully excluded from employment is entitled to back pay subject to a reduction for unemployment compensation benefits received.  Therein, we reasoned that the state should not be required to compensate an individual twice. *Id.*, 68 Ohio St.2d at 7, 22 O.O.3d at 98-99, 427 N.E.2d at 516.

{¶ 21} In *Mers v. Dispatch Printing Co.* (1988), 39 Ohio App. 3d 99, 105, 529 N.E.2d 958, 965, the court of appeals extended *Guerrero*, *supra*, to apply to a private employer under the reasoning that the private employer pays into the Unemployment Compensation Fund and would in effect be paying twice if the employer were required to pay an award undiminished by the amount of unemployment compensation the terminated employee had received.

{¶ 22} In contrast, the Sixth Circuit United States Court of Appeals has firmly refused to deduct unemployment compensation benefits from back pay awards in cases involving discrimination.  See, *e.g.*, *Rasimas*, *supra*; *Knafel v. Pepsi-Cola Bottlers of Akron, Inc.* (C.A. 6, 1990), 899 F.2d 1473, 1480.  See, also, *Jones v. Ohio Dept. of Mental Health* (S.D. Ohio 1987), 687 F.Supp. 1169.

{¶ 23} As stated in *Plumbers & Steamfitters*, *supra*, this court will apply federal law precedent interpreting Title VII of the 1964 Civil Rights Act to cases involving violations of R.C. Chapter 4112.  66 Ohio St.2d at 196, 20 O.O.3d at 202-203, 421 N.E.2d at 131.  In addition to the cases decided by the Sixth Circuit, a number of other federal courts have followed the rationale expressed by the United States Supreme Court in *Natl. Labor Relations Bd. v. Gullett Gin Co.* (1950), 340

---

1.  R.C. 4112.05(G) states in part:  "If the commission directs payment of back pay, it shall make allowance for interim earnings."

U.S. 361, 71 S.Ct. 337, 95 L.Ed. 337, in holding that unemployment benefits should not be deducted from a back pay award to an employee fired in violation of the National Labor Relations Act. See, *e.g.*, *Hunter v. Allis-Chalmers Corp., Engine Div.* (C.A. 7, 1986), 797 F.2d 1417; *Kauffman v. Sidereal Corp.* (C.A. 9, 1982), 695 F.2d 343; *Craig v. Y & Y Snacks, Inc.* (C.A. 3, 1983), 721 F.2d 77. As pointed out by *amici*, courts have determined that deduction of unemployment compensation benefits from a back pay award should not be allowed because such benefits are collateral, and that the wrongdoers should not get the benefit of payments that come to the aggrieved party from a collateral source.

{¶ 24} In resolving this issue, we note that R.C. 4112.05 attempts not only to compensate victims of unlawful discrimination and make the victim whole, but also to deter discrimination from occurring in the first place. However, allowing the discriminating employer to deduct unemployment benefits from a back pay award would benefit the employer by reducing the deterrence against discriminatory conduct while conferring no gain upon the victim. See *Kauffman*, *supra*, 695 F.2d at 347. Therefore, we reverse the judgment of the court of appeals on the cross-appeal and hold that unemployment compensation benefits are not "interim earnings" and should not be deducted from a back pay award made pursuant to R.C. 4112.05(G).

{¶ 25} We are mindful that our decision today runs counter to our prior opinion in *Guerrero*, *supra*. While the rationale of *Guerrero* appears logical on the grounds that the state cannot be required to pay twice, we limit that holding to its particular facts, inasmuch as *Guerrero* did not involve unlawful employment discrimination.[2]  As succinctly summed up by *amici*, the risk of over- or

---

2. The court of appeals' decision in *Mers*, *supra*, is readily distinguishable from the cause *sub judice*, since the back pay award in *Mers* was premised upon promissory estoppel, not unlawful employment discrimination.

undercompensation should be borne by the perpetrator of the discrimination, not the victim.

{¶ 26} Based on all of the foregoing, the judgment of the court of appeals is affirmed in part and reversed in part, thereby reinstating the judgment of the trial court.

*Judgment accordingly.*

DOUGLAS, RESNICK and F.E. SWEENEY, JJ., concur.

MOYER, C.J., and PFEIFER, J., concur in paragraphs one, two and three of the syllabus and in the judgment.

WRIGHT, J., dissents.

---

**WRIGHT, J., dissenting.**

{¶ 27} I dissent from paragraph four of the syllabus, which holds that unemployment compensation benefits are not considered interim earnings and thus cannot be deducted from a back pay award granted pursuant to R.C. 4112.05(G).

{¶ 28} I agree with the majority that, as with Title VII of the 1964 Civil Rights Act, the fundamental purpose behind a back pay award granted under R.C. 4112.05(G) is to "mak[e] persons whole for injuries suffered through past discrimination." *Albemarle Paper Co. v. Moody* (1975), 422 U.S. 405, 421, 95 S.Ct. 2362, 2373, 45 L.Ed.2d 280, 299. I do not agree, however, that a back pay award should place a person in a significantly *better* position than he or she would have been had there been no unlawful discrimination.

{¶ 29} Permitting an employee to retain unemployment compensation benefits as well as the entire back pay award gives a windfall to the employee and serves to punish the employer. In such a situation the employee is more than made whole; he or she is essentially allowed a *double* recovery. The majority reasons that this result is justified by its deterrent effect on future discrimination, and that allowing the deduction would benefit the employer by reducing deterrence. That

rational is simply overstated. It is not the fact that an employer may have to pay an employee's unemployment compensation that provides deterrence. Rather, deterrence of unlawful employment discrimination is found in the abundance of remedies set forth in R.C. 4112.05(G), not the least of which is back pay, less interim earnings of course.

{¶ 30} Relying on *Plumbers & Steamfitters Joint Apprenticeship Commt. v. Ohio Civ. Rights Comm.* (1981), 66 Ohio St.2d 192, 20 O.O.3d 200, 421 N.E.2d 128, the majority feels compelled to apply federal law precedent that interprets Title VII to cases that involve violations of R.C. Chapter 4112. Thus, after citing several federal cases that refused to permit a deduction of unemployment compensation from a back pay award granted to a person unlawfully discriminated against under Title VII, the majority finds that this court must come to the same conclusion under R.C. 4112.05(G).

{¶ 31} We are in no such way bound. While we may find that federal law provides an influential authority when dealing with matters of discrimination under R.C. Chapter 4112, because we are interpreting state law we need not find federal law persuasive in every case. *Plumbers*, the authority relied on by the majority in making its pronouncement that this court will follow federal precedent, merely notes that in previous cases the court found federal law interpreting Title VII to be generally applicable to cases involving violations of R.C. Chapter 4112. *Plumbers*, *supra*, 66 Ohio St.2d at 196, 20 O.O.3d at 202-203, 421 N.E.2d at 131. That observation is not a mandate. *Plumbers* does not require us to apply federal law in every situation. Thus, there is no authority which dictates that we must follow federal law precedent when interpreting state discrimination laws.

{¶ 32} While the majority limits *State ex rel. Guerrero v. Ferguson* (1981), 68 Ohio St.2d 6, 22 O.O.3d 98, 427 N.E.2d 515, and distinguishes *Mers v. Dispatch Printing Co.* (1988), 39 Ohio App.3d 99, 529 N.E.2d 958, it is my firm belief that they are the authority that should be applied to this case. In *Guerrero*, this court

held that unemployment compensation benefits should be deducted from back pay awarded to a reinstated public employee who had been unlawfully excluded from employment. In *Mers*, the Court of Appeals for Franklin County extended the application of *Guerrero* to a private employer.

{¶ 33} Although neither *Guerrero* nor *Mers* involved unlawful employment discrimination, both dealt with the issue of whether unemployment compensation should be deducted from back pay awarded to a wrongfully terminated employee and both resolved the issue in favor of deductibility. I find no compelling reason to treat differently an award of back pay to an employee terminated due to unlawful discrimination and an employee unlawfully terminated for other reasons. Regardless of the characterization of the type of wrongful discharge, the fundamental principle that back pay is intended to make a person whole still applies.

{¶ 34} I believe the correct interpretation of the back pay issue in R.C. 4112.05(G) was stated by the Court of Appeals for Lucas County in *Ohio Civ. Rights Comm. v. Lucas Cty. Welfare Dept.* (1982), 6 Ohio App.3d 14, 6 OBR 38, 451 N.E.2d 1246. In that case the court of appeals held that an award of back pay as a result of employment discrimination under R.C. 4112.05(G) is intended to compensate the employee, not punish the employer or provide a windfall to the employee.

{¶ 35} I would adopt the reasoning in *Lucas Cty. Welfare Dept.* and would affirm the judgment of the court of appeals.

_____