**Laszlo VASS, Plaintiff**

v.

**The RIESTER & THESMACHER CO., Defendant.**

**No. 1:97 CV 2892.**

United States District Court,
N.D. Ohio,
Eastern Division.

Jan. 6, 2000.

Oscar Trivers, Steven L. Howland, Hardiman, Buchanan, Howland & Trivers, Cleveland, OH, for Plaintiff.

Robert C. McClelland, Lynn G. Murphy, Rademaker, Matty, McClelland & Greve, Cleveland, OH, for Defendant.

## MEMORANDUM OF OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

WELLS, District Judge.

### Introduction

This case is before the Court on defendant Riester & Thesmacher Co's ("Riester") motion for summary judgment. The suit was brought by plaintiff Laszlo Vass, alleging disability discrimination under the Americans with Disabilities Act ("ADA") and Ohio Revised Code § 4112.99, retaliatory actions in violation of Title VII of the Civil Rights Act, discrimination on the basis of national origin under Ohio Revised Code § 4112.99, and intentional infliction of emotional distress. Mr. Vass filed a memorandum in opposition to the motion for summary judgment, and Riester filed a reply memorandum. For the reasons that follow, Riester's motion is granted.

### I. Background and Procedural History

Riester is a contract sheet metal fabricator which employs approximately thirty-five people, including Laszlo Vass. (Burt Dep. at 8, 11.) Mr. Vass began work at Riester on 9 October 1989 as a press brake operator. From that time until January of 1993, he operated one of the company's five press brakes with mechanical pedals. (Transcript of Arbitration Hearings at 21–22 (hereinafter Tr.)) Mr. Orest Nydza operated the only press brake with an electrical pedal. (Tr. at 73–74.) Although the two machines perform essentially the same functions and both require the operator to step down on a pedal, the mechanical brake requires greater physical effort on the part of the operator. (Tr. at 46–47.)

On 18 January 1993, Mr. Vass slipped on some ice in the company parking lot and injured his knee. (Tr. at 22.) He took two days off to recover and then worked for approximately three weeks. He found it impossible, however, to operate the mechanical press brake due to pain, swelling, and instability in his knee, and he thus consulted his physician on 4 March 1993.

(Tr. at 23–25.) After examining him, Dr. Shin recommended he be given light duty for two months. (Pl's Ex. A.) Mr. Vass presented the recommendation to Riester's management, but was told "no light duty available." (Pl's Ex. A.) According to Timothy Burt, the President of Riester, the company had an unwritten policy against light duty. "The basic policy," he testified, "is that if a person comes ... with a doctor's excuse or slip from a doctor, physician, that says light-duty work only, we have to send them home. We can't employ them. It's a policy that goes back a long, long ways." (Tr. at 115–16.)

Given the company's policy and Mr. Vass's injury, Mr. Vass was placed on Temporary Total Disability by the Ohio Bureau of Workers Compensation ("BWC"). (Tr. at 27–28; Def's Ex. C.) He had knee surgery on 7 May 1993 and, after extensive physical therapy, returned to work approximately three months later, in October of 1993. (Tr. at 29; Pl's Ex. G.) He then worked for a short time on the automatic punch press before taking up his old position on the mechanical press brake. (Tr. 30–31; 101–02.)[1] Once again, however, Mr. Vass could tolerate the physical stress for only a short period. After approximately two months, the pain, swelling, and instability returned, and he was referred by the BWC for additional physical therapy from December 1993 until January of 1994. (Tr. at 31; Def's Ex. C.) He was not working throughout this period. (Tr. at 32.)[2]

With the two months of physical therapy, Mr. Vass was able to return to and remain at Riester for over a year—from January 1994 to April 1995.[3] (Def's Ex. C; Pl's Ex. G.) He apparently operated the mechanical press brake until December 1994, but his knee continued to give him difficulties, and he scheduled a second surgery for April 1995. (Pl's Ex. G.)

Mr. Vass was able to remain at work until the second surgery because Riester had purchased a hydraulic press brake with a electrical pedal in October of 1994. The new machine was originally operated by Mr. Orest Nyzda—who had greater seniority than Mr. Vass.[4] In December 1994, however, Mr. Nyzda suggested Mr. Vass take over the new brake in order to rest his knee before surgery. (Vass Aff. ¶ 6.) Mr. Vass did so for the next four months, although his success on the job is disputed. According to Mr. Vass, he received training during his "first couple weeks" and then required no further assistance. (Vass Dep. at 44; Vass Aff. ¶ 7.). According to Riester, "Mr. Vass never became effective or efficient in operating the press." (Mtn. at 16.)

On 26 April 1995, Mr. Vass had a second knee surgery. He then underwent three months of active physical therapy and was released to work under the BWC's incentive program in October of 1995. (Pl's Ex. G.)[5] Under that program, he returned to work gradually, working increasingly longer shifts over the course of a month until

---

1. It is not clear whether Mr. Vass was working with or without restrictions. *Compare* Tr. at 29–30 (no restrictions) *with* Mr. Vass Dep. at 18 (with restrictions).

2. The report of the Grievance Committee offers a slightly different version of events. According to their report, Mr. Vass had been transferred to a local rehabilitation center for therapy following his May 1993 surgery. "Again he was given a doctor's statement allowing him to return to work, if such work was light duty and not involving the operation of the mechanical petal [sic] brake press. The Employer again cited no light duty work existed and [Mr. Vass] was then placed on Liv-

ing Maintenance by the BWC from Oct. 13, 1993—January 16, 1994." (Def's Ex. C.)

3. Both parties now agree that Mr. Vass worked for slightly over a year. According to Mr. Vass's testimony before the arbitrator, however, he worked only "a couple of months." (Tr. at 33.)

4. It is unclear what happened to the electrical press brake Mr. Nyzda originally operated.

5. According to Mr. Vass's Motion in Opposition, he returned to work in November of 1995. (Mtn. in Opp'n at 5.)

he was working full time on the mechanical press brake. (Tr. 39–40.)

On 21 November 1995, Mr. Vass was back in Dr. Shin's office with a swollen and painful knee. (Tr. at 40.) Dr. Shin wrote out a restriction, allowing him to return to work full time only on the condition he be given light duty—*i.e.*, that for six months he operate a press brake with an electrical, not a mechanical, pedal. (Tr. at 40.) Riester again stated no light duty was available and maintained that placing him on the electric brake was not a viable alternative. (Tr. at 42.) Mr. Vass was thus placed on disability leave effective 22 November 1995. (Pl's Ex. G.)

Mr. Vass decided to take legal action. On 22 November 1995 he went with Sava Pacanin to the offices of the EEOC, was interviewed by an EEOC investigator, and ultimately filed EEOC Charge No. 220960300. (Br. in Opp'n. at 5; Pl's Ex. B.)[6] He simultaneously filed a grievance with Local No. 486 of the Sheet Metal Workers' International Association. (Pl's Ex. C.) In both, he alleged that Riester had violated the ADA by failing to accommodate his disability. (Pl's Exs. B, C.)[7]

Around the same date, Mr. Pacanin notified the company of Mr. Vass's actions. The company set up a meeting with both Mr. Pacanin and Mr. Vass on 27 November 1995. According to Mr. Pacanin, the union wanted Riester either to give Mr. Vass light duty work for six months until his knee was fully healed or to allow Mr. Vass to again take Mr. Nyzda's place on the press brake with the electrical pedal. (Mr. Nyzda had agreed to this arrangement.) (Tr. at 75.) Riester's president— Tim Burt—refused, although he apparently told Mr. Vass he would try to alter one of the mechanical press brakes so that Mr. Vass could operate it. (Tr. at 75–76.)

Because Mr. Vass could operate none of the available press brakes, he was unable to return to work following the 27 November 1995 meeting. On 15 December 1995, however, Riester offered Mr. Vass an assignment in the Paint and Packaging Department. This job apparently involved a variety of tasks, including packaging, assisting the painters, and engaging in light assembly work. He would also be required to perform a job that involved "phosphating." "To perform this task, parts that were covered in oil had to be lifted by crane and dipped in a series of three tanks which contained cleaning solvents.... To reach the cleaning tanks, the operator [must] climb one step between the ground and a platform which sits 18' from the floor.... [He] would have to climb the step once every twenty to thirty minutes (the length of the cleaning cycle)." (Mtn. for S.J. at 3–4.)[8] Mr. Vass refused this offer on the grounds he could not climb the stairs (Tr. at 65), he was allergic to the chemicals (Vass Dep. at 29–30 ), and the position was punitive and little more than a downgrade from the status of a skilled tradesman to general laborer (Br. in Opp'n at 6; Vass Dep. at 47).

On 6 January 1996, Mr. Vass injured himself again when he fell down some stairs in his home. (Tr. at 44.) He thus remained out of work—but he was no longer on disability. Apparently, the BWC "stated that as of January 22nd, [1996] his living maintenance was closed because of his refusal to participate in their rehabilitation program which included job seeking." (Tr. at 90, 92.)[9]

On or around 23 February 1996, Sava Pacanin apparently came to Mr. Vass's home with a settlement offer from Mr. Burt. Specifically, he told Mr. Vass that

---

**6.** According to Mr. Vass, the government shut-down meant the charge was not actually filed until 16 January 1996.

**7.** In neither the grievance nor in the charge to the EEOC did Mr. Vass mention discrimination on the basis of national origin, nor did he bring a disparate impact claim.

**8.** Mr. Vass does not dispute Riester's description, but the parties do dispute whether Riester offered to ramp the stairs prior to the arbitration of Mr. Vass's grievance. (Vass Aff. ¶ 10; Burt Dep. at 64.)

**9.** According to Mr. Vass, his disability benefits ceased in *July* of 1996. (Mtn. in Opp'n at 10.)

Mr. Burt would agree to accommodate Mr. Vass's physical problems if Mr. Vass agreed to drop both the EEOC charge and the union grievance. Mr. Vass again refused the offer. (Vass Aff. ¶ 17.) [10]

Mr. Vass was apparently scheduled for release back to work in December of 1996, but on 13 October 1996 he asked his doctor to release him earlier.[11] He wanted to do so, he claims, because Riester had recently purchased a new hydraulic press brake with an electrical pedal, and he wanted the chance to operate it. Riester allegedly refused to allow him back until he had received a clean bill of health from the company's doctor, but Mr. Vass could not see the doctor for approximately 45 days, and Riester did not approve his return to work until January of 1997. In the meantime, Riester assigned another employee to the machine with four years less seniority than Mr. Vass. (Br. in Opp'n at 9.)

Mr. Vass filed an EEOC charge of retaliation on 21 October 1996. (Charge No. 220970096.) In this one, he alleged the following:

> I filed EEO Charge No. 220960300 on January 16, 1996. On February 23, 1996, the company offered a settlement of returning me to work if I dropped the charge. I did not agree to the settlement.
>
> On October 21, 1996, Timothy Burt, the President, denied my accommodation request of working on a Press Brake machine with an electrical foot pedal.
>
> Mr. Burt said one of the reasons I couldn't work on the machine was because of my previous EEO complaint. I would have to work in another department.

I believe I was denied an accommodation of a Press Brake machine with an electrical foot pedal, in retaliation for filing a previous charge of discrimination, and for not dropping that charge in settlement.

(Def's Ex. B.)

When Mr. Vass returned to work in January of 1997, he went to work in the Metal Finishing Department. (Br. in Opp'n at 10.) He apparently worked there until October of that year when he broke his wrist. He was then off work until February of 1998. (Br. in Opp'n at 12.) Although he claims he was laid off in September of 1998 for lack of work,[12] he was apparently recalled almost immediately because he claims he went on disability again on 17 November 1998. (Br. in Opp'n. at 12.) By the date of his deposition, 22 October 1998, Mr. Vass was back at Riester, working as a general laborer. (Vass Dep. at 11.) Specifically, "[h]e's working on a series of machines which include a Hager punch press, a debrising machine, an edge debrising machine. He occasionally does drilling; he occasionally does tapping; whatever is needed that fits his limitations." (Burt Dep. at 63.)

On 13 November 1997, Mr. Vass filed a complaint in this Court, alleging disability discrimination under the Americans with Disabilities Act ("ADA") and Ohio Revised Code § 4112.99, retaliatory actions in violation of Title VII of the Civil Rights Act, discrimination on the basis of national origin under Ohio Revised Code § 4112.99, and intentional infliction of emotional distress. Riester filed a motion for summary judgment on 30 November 1998.

10. Neither party has submitted a copy of the settlement agreement.

11. The record offers conflicting dates (or no dates at all) for events following the 27 November 1995 meeting. Riester's recitation of the facts ceases with that meeting and its immediate aftermath; Mr. Vass offers events with no dates or with conflicting dates. It appears, for instance, that Mr. Vass was not working throughout 1996. He states clearly that he was injured badly in January of 1996, and he suggests that he was not scheduled to return to work until October or December of that year. In his affidavit, however, he states that he was ordered to lift a 150–pound cabinet on 25 March 1996. (Vass Aff. ¶ 3.)

12. Mr. Vass alleges further that a worker with less seniority was allowed to remain and that he filed a third EEOC charge as a result. No copy of a charge is attached, however, and his complaint mentions only Charge Nos. 220960300 and 220961390.

For the reasons that follow, Riester's motion is granted.

## II. *Hearsay Which Cannot be Considered*

■ In its reply brief, Riester objects to two affidavits attached to Mr. Vass's Brief in Opposition, one from Mr. Sava Pacanin and one from Mr. Vass himself. (Reply at unnumbered 3–4.) As Riester points out, an affidavit submitted in support of a motion for summary judgment must (1) be based on personal knowledge, (2) set forth facts admissible in evidence, and (3) show the affiant is competent to testify as to the matters contained in the affidavit. *See* Fed.R.Civ.P. 56(e); *Casas Office Machs., Inc. v. Mita Copystar Am., Inc.*, 42 F.3d 668, 682 (1st Cir.1994). A court must disregard any hearsay statements when ruling on summary judgment motions, but it should consider any remaining portions of an affidavit that are admissible. *See U.S. Structures, Inc. v. J.P. Structures, Inc.*, 130 F.3d 1185, 1189 (6th Cir.1997).

With respect to both affidavits, the vast majority of statements can properly be considered. Five statements, however, will not be considered.

*Vass Affidavit, Paragraph 9.* Mr. Vass claims "I was told by Sava Pacanin and others that that [sic] Timothy Burt said that I would never be a brake press operator for Reister [sic] again for as long as he was president." To the extent this statement is offered for the truth of the matter, it is hearsay and thus will not be considered.

*Vass Affidavit, Paragraph 11.* In this paragraph, Mr. Vass states Sava Pacanin came to his home on 23 February 1999 and "gave me a 'Proposed settlement L. Vass' that Mr. Burt had asked him to give me. The proposal required me to drop all actions taken by me against the company, including grievances and EEOC charge 220960300 as a condition for resolution. I refused to accept the proposal." This statement contains two examples of hearsay. Neither party has submitted a copy of the alleged settlement offer, and this Court thus cannot assume Mr. Vass has accurately recited its contents. This Court cannot, moreover, accept Mr. Vass's assertion as to what Mr. Pacanin allegedly said. Hence, paragraph 11 will not be considered.

*Vass Affidavit, Paragraph 17.* According to Mr. Vass, "[m]anagement also began to stir up resentment and anger towards me from coworkers after I filed my charge with the EEOC and filed the union grievances. For the first time, I began to be called vulgar and profane names by my co-workers. They told me that management had told them that I was jeopardizing their jobs." (Vass.Aff.¶ 17.) Because Mr. Vass does not claim to have personal knowledge of management's actions and because the allegations about what Riester told Mr. Vass's co-workers constitute inadmissible hearsay, Paragraph 17 will not be considered.

*Pacanin Affidavit, Paragraph 6.* Mr. Pacanin states the company never disputed "that Mr. Vass had a disability that prevented him from operating the mechanical brake press." Mr. Pacanin cannot speak from personal knowledge about decisions Riester made during the course of this litigation. Hence, this Court will not consider this statement.

*Pacanin Affidavit, Paragraph 8.* Here, Mr. Pacanin claims a statement by Mr. Burt "caused concern among the employees about the effects that Mr. Vass' law suit might have on the stability of the company and concern for their jobs." Because Mr. Pacanin cannot speak from personal knowledge about the unspoken feelings of Riester employees, this Court will not consider this statement.

## III. *Law and Analysis*

### A. *Summary Judgment Standard*

Summary judgment is appropriate if the evidence in the record shows there is no genuine issue of material fact and the moving party is entitled to judgment as a

matter of law. Fed.R.Civ.P. 56(c). The Supreme Court has further explained:

[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Where the nonmoving party has the burden of proof in a case, the initial burden on the moving party under Rule 56 "may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Betkerur v. Aultman Hosp. Ass'n,* 78 F.3d 1079, 1087 (6th Cir.1996).

"When a motion for summary judgment is made and supported as provided in [Rule 56], an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but … must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). The "mere existence of a scintilla of evidence in support of the [nonmovant]'s position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In considering a motion for summary judg-

ment, the evidence must be viewed in the light most favorable to the party opposing the motion, *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). However, "conclusory allegations standing alone will not defeat a properly supported motion for summary judgment." *White v. York Int'l Corp.,* 45 F.3d 357, 363 (10th Cir.1995).

**B. *Individual Disparate Treatment Claim***

■ In Counts Two and Five of his complaint, Mr. Vass alleges Riester discriminated against him solely on the basis of his disability.[13] To succeed in such a claim, he must establish: (1) he was disabled within the statutory definition of disability under the ADA; (2) he was qualified to perform the essential functions of her or his position with or without reasonable accommodation; and (3) he suffered an adverse employment decision because of his disability. *McKay v. Toyota Motor Mfg., U.S.A., Inc.,* 110 F.3d 369, 371 (6th Cir.1997).

A person is disabled within the meaning of the ADA if he or she has "a physical or mental impairment that *substantially limits* one or more of the *major life activities* of such individual." 42 U.S.C. § 12102(2).[14]

The definition of a substantially limiting physical impairment is a narrow one. Under the ADA's regulations, a person is "substantially limit[ed]" if she or he is "[u]nable to perform a major life activity that the average person in the general population can perform" or is "[s]ignificantly restricted as to the condition, man-

---

**13.** The Ohio Supreme Court has determined that "federal case law interpreting Title VII of the Civil Rights Act of 1964, Section 2000e et seq., Title 42, U.S.Code, is generally applicable to cases involving alleged violations of [Ohio Revised Code] Chapter 4112." *Ohio Civil Rights Commn. v. Ingram,* 69 Ohio St.3d 89, 630 N.E.2d 669, 672 (1994). Analysis of Mr. Vass's Title VII claim and his Ohio Revised Code claim will thus be considered together.

**14.** 42 U.S.C. § 12102(2) also states that an individual is "disabled" if s/he has "a record of such an impairment; or is regarded as having such an impairment." Neither definition is relevant to this case. Neither party disputes the facts, moreover, that Mr. Vass had physical impairments and was an employee of Riester at the time the complaint was filed.

ner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." 29 CFR § 1630.2(j).

In the Sixth Circuit, moreover, a physical condition or limitation is not considered a substantial impairment or handicap "unless it places an individual so far outside the norm as to make it impossible or unusually difficult for that individual to perform work that could be done by most other people." *Szalay v. Yellow Freight Sys. Inc.*, 998 F.Supp. 799, 802 (N.D.Ohio 1996) (internal citations omitted). The court in *Penny v. United Parcel Serv.*, 128 F.3d 408 (6th Cir.1997) thus found a plaintiff was not disabled within the meaning of the ADA despite the fact he suffered from a permanent partial impairment, would have long-term difficulty running and walking, and could not lift consistently more than twenty-five pounds. *Id.* at 416. Similarly, the *Horth* court determined a plaintiff did not fall under the statute although he was unable to sit or stand for more than two hours at a time, had difficulty walking and walked with a limp, had difficulty continually lifting objects over twenty-five pounds, was adversely affected by certain atmospheric pressure systems, and suffered from temporary total disability of several joints. *Horth v. General Dynamics Land Sys. Inc.*, 960 F.Supp. 873, 878 (M.D.Pa.1997) (quoted in *Williamson v. Hartmann Luggage Co.*, 34 F.Supp.2d 1056, 1062 n. 8 (M.D.Tenn. 1998)).[15]

Both Congress and the courts have set forth similarly narrow interpretations of the "major life activity of working." Under the ADA regulations, "major life activities" include "functions such as caring for

oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). A person is substantially limited in the major life activity of working if she or he is "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." 29 C.F.R § 1630.2(j)(3)(i). The Sixth Circuit has thus held "it is not enough that an impairment interferes with an individual's ability to do a particular job when it did not otherwise significantly decrease that individual's ability to obtain satisfactory employment." *Jasany v. United States Postal Svc.*, 755 F.2d 1244, 1248 (6th Cir. 1985) (quoting with approval, *E.E. Black, Ltd. v. Marshall*, 497 F.Supp. 1088, 1099–1100 (D.Haw.1980)). "The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." 29 C.F.R. § 1630.2(j)(3)(i).

Mr. Vass claims he has a physical impairment which substantially limits him in a number of major life activities. Specifically, he states his "ability to walk is substantially limited. He often loses his balance and wears a knee brace. Walking up and down stairs is painful and elicits a popping noise from his knee.... Because of his condition, he mainly stays on the first floor of his split level home .... [He] has trouble with repetitive bending, has discomfort with kneeling or squatting and is only able to stand for approximately 30 minutes intervals before experiencing discomfort." (Br. in Opp'n at 16.) He further notes his doctor has restricted him from carrying weights of more than twenty-five pounds, (Pl's Ex. G), and he suggests he is substantially limited in his abili-

---

**15.** It is worth noting the Supreme Court's recent holding that "the determination of whether an individual is disabled should be made with reference to measures that mitigate the individual's impairment." *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, —— ——, 119 S.Ct. 2139, 144 L.Ed.2d 450(1999).

Hence, if a plaintiff can see normally while wearing glasses or can walk without significant impairment while wearing a brace or using a cane, she or he cannot be considered disabled within the meaning of the ADA. *See id.* at 450–51.

ty to work because he cannot operate a mechanical press brake.

■ These facts suggest Mr. Vass has physical limitations, but they do not cause him to fall within the narrow definition of "disabled" set forth in the ADA regulations or in the courts' interpretation of them. He can, for instance, walk without a wheelchair or a cane, using only a knee brace while at work. (Vass Dep. at 36–37.) He can negotiate the eight stairs in his split-level home without assistance. (Vass Dep. at 37–38.) He works outside in his garden and performs the family's yard-work on his own. (Vass Dep. at 39.) He can still lift objects under twenty-five pounds. *See Williams v. Channel Master Satellite Sys., Inc.,* 101 F.3d 346, 349 (4th Cir.1996) (holding, "as a matter of law, that a 25–pound lifting limitation does not constitute a significant restriction on one's ability to lift, work, or perform any other major life activity"). And he can operate a wide variety of machinery while at work, including a "Haeger machine, time-saver machine, punch press machine, several drill presses, wire wheel (deburring), Wiedemann machine, and others." (Br. in Opp'n at 4.) Indeed Mr. Vass works now at Riester as a general laborer who does "[a]lmost everything." (Vass Dep. at 11.) At best, then, Mr. Vass's evidence shows he cannot perform a particular kind of job—namely, operating a mechanical press brake as opposed to an electrical or hydraulic press brake. The "major life activity of working," however, does not mean working in the job of one's choice. *See Sutton,* 527 U.S. ——, 119 S.Ct. 2139, 144 L.Ed.2d 450; *Welsh v. Tulsa,* 977 F.2d 1415, 1417 (10th Cir.1992).

Mr. Vass has, then, failed to establish he is disabled within the meaning of the ADA and has likewise failed to establish the first element of his prima facie case.[16] On Counts Two and Five of the complaint, summary judgment in favor of Riester is thus mandated.

### C. *Disparate Impact Claim*

In Count One of his complaint, Mr. Vass brings a disparate impact claim under the ADA, alleging "he continuously requested a reasonable accommodation, but defendant refused on the grounds that Riester does not as a matter of policy accommodate disabilities." (Cplt.¶ 11.)

The ADA does define "discrimination" to include "methods of administration that have the *effect* of discrimination on the basis of disability." However, it only prohibits discrimination against qualified individuals with a disability. *See* 42 U.S.C. § 12112(b)(3)(A), (a). As discussed above, however, Mr. Vass is not a qualified individual with a disability, and he thus does not have standing to raise a disparate impact claim.

On Count One of the complaint, summary judgment in favor of Riester is therefore granted.

### D. *Retaliation*

In Count Three of his complaint, Mr. Vass alleges Riester retaliated against him for filing charges with the EEOC when it refused to allow him to operate the hydraulic press brake. (Cplt. ¶ 18; Br. in Opp'n at 20.) Analysis of this claim returns to the familiar tripartite standard of proof set forth in *McDonnell Douglas* and *Burdine.* Mr. Vass must establish a prima facie case by showing: (1) he engaged in a protected activity; (2) an adverse employment action occurred; and (3) a casual link exists between the protected activity and the adverse action. *See Workman v. Frito–Lay, Inc.,* 165 F.3d 460, 469 (6th Cir. 1999). If Mr. Vass successfully establishes a prima facie case, the burden shifts to Riester to "articulate some legitimate, non-discriminatory reason" for its actions. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817. Mr. Vass, who bears the burden of persuasion throughout the entire process, then must demonstrate "that the

---

**16.** "If Mr. Vass fails to establish a prima facie case, it is unnecessary to address the question of reasonable accommodation." *Jasany,* 755 F.2d at 1250.

proffered reason was not the true reason for the employment decision." *Burdine,* 450 U.S. at 256, 101 S.Ct. 1089; *see also Canitia v. Yellow Freight Sys.,* 903 F.2d 1064, 1066 (6th Cir.1990).

■ Mr. Vass has not shown he suffered from a "materially adverse" employment action. *See Kocsis v. Multi–Care Management, Inc.,* 97 F.3d 876, 886 (6th Cir.1996) (adopting Seventh Circuit's heightened standard). According to Mr. Vass, Riester retaliated against him by offering him a job in Paint and Packaging "it knew he didn't want" and by refusing to allow him to work at the job of his choice. (Br. in Opp'n at 20.) He does not dispute, however, that he exercised his option not to take the unwanted job in the Paint and Packaging Department and that he nonetheless continues to work at Riester with the same salary and work-hours as before he filed his EEOC charges.[17] Indeed he now works in a variety of skilled positions, operating "a series of machines which include a Hager punch press, a debrising machine, an edge debrising machine. He occasionally does drilling; he occasionally does tapping; whatever is needed that fits his limitations." (Burt Dep. at 63.) Under 6th Circuit law, "reassignments without salary or work hour changes do not ordinarily constitute adverse employment decisions in employment discrimination claims." *Kocsis,* 97 F.3d at 885.

■ Even if this Court assumed Mr. Vass had suffered an adverse employment action, he has nonetheless failed to "produce evidence from which an inference can be drawn that his protected activity was the likely reason for the [allegedly] adverse action." *Fox v. Certainteed Corp.,* No. 98–1948, 1999 WL 1111495, at *6 (6th Cir. Nov.23, 1999) (citing *Zanders v. National R.R. Passenger Corp.,* 898 F.2d 1127, 1135 (6th Cir.1990)). Mr. Vass attempts· to prove causation by resting on Mr. Burt's alleged statement that he would never allow Mr. Vass to operate a press brake[18] and on the timing of certain events. (Br. in Opp'n at 20.) Mr. Burt's alleged statement does not, however, establish a causal connection since it can suggest two equally plausible states of mind. While it can be interpreted to suggest hostility, it can also show Mr. Burt's opinion that Mr. Vass could not operate the machinery available at Riester. Mr. Vass has admitted he is physically incapable of operating a mechanical press brake; both Mr. Burt and Mr. Jozity have testified Mr. Vass needed too much assistance in operating the new hydraulic press brake. (Tr. at 100, 106, 115.) Likewise the timing of Riester's decisions about who would operate the various press brakes fails to establish the requisite causal connection. Although Riester did allow Mr. Vass to operate the hydraulic press brake for four months in 1995, it had refused to assign him to it on three previous occasions—in March 1993, October 1993, and January 1994. Mr. Vass did not file his first EEOC charge until almost ten months after the last refusal, in October of 1994. Similarly, Mr. Vass claims Riester purchased a new hydraulic press brake while he was on leave in October of 1996 and then, in an act of retaliation, failed to tell him it had done so. These alleged events occurred, however, one year after he had filed his first charge and one week before he filed his second. The timing does not give rise to an inference that Riester was retaliating for Mr. Vass's protected activity.

Because Mr. Vass has not brought forth evidence sufficient to establish his prima facie case, he has likewise failed "to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). As

---

**17.** Had Mr. Vass been fired when he refused to take the position, this Court might have reached a different conclusion.

**18.** This statement would not be admissible for the truth of the matter, but it is admissible as evidence of the declarant's state of mine—*i.e.,* his alleged hostility toward Mr. Vass.

such, Riester's motion for summary judgment on Count Three is granted.

### E. *Intentional Infliction of Emotional Distress*

Count Four of Mr. Vass's complaint raises a claim of intentional infliction of emotional distress. (Cplt.¶¶ 19–27.) In order to prevail on such a claim a plaintiff must demonstrate the following four elements:

1. The actor either intended to cause emotional distress or knew or should have known that actions taken would result in serious emotional distress to the plaintiff;

2. The actor's conduct was so extreme and outrageous as to go beyond all possible bounds of decency and was such that it can be considered as utterly intolerable in a civilized community;

3. The actor's actions were the proximate cause of plaintiff's psychic injury; and

4. The mental anguish suffered by plaintiff is serious and of a nature that no reasonable man could be expected to endure it.

*Takach v. American Medical Technology, Inc.,* 128 Ohio App.3d 457, 463, 715 N.E.2d 577 (Ct.App.1998).

In this case, Mr. Vass has failed to offer any evidence that Riester's conduct "was so extreme and outrageous as to go beyond all possible bounds of decency," and he has likewise offered no evidence he suffered severe mental anguish. Indeed he admits he never sought psychological treatment. (Vass Dep. at 48.) As such, Reister's motion for summary judgment on Count Four is granted.

### National Origin Discrimination

In Count Six of his Complaint, Mr. Vass alleges the "[d]efendant is liable to Plaintiff under O.R.C. 4112.99 for discriminating against the Plaintiff on the basis of national origin." (Cplt.¶ 31.) This Court would have jurisdiction to hear this claim despite the fact that Mr. Vass failed to raise it before the EEOC. Although plaintiffs must exhaust their administrative remedies when bringing claims under Title VII, the Ohio courts have found "nothing in R.C. Chapter 4112 that would require reading an exhaustion of remedies requirement into R.C. 4112.99." *See Larkins v. G.D. Searle & Co.,* 68 Ohio App.3d 746, 750, 589 N.E.2d 488 (Ct.App.1991).

Nonetheless, Mr. Vass has not presented enough evidence to prevail on a national origin discrimination claim. Although he claims one Hungarian was fired and one retired, he admits no one ever informed him that he was not being allowed to work on the hydraulic presses because of his nationality. Perhaps more importantly, he also admits his claim "is just a possibility. I'm not saying that that's true. Maybe it could be, but I'm not positively sure." (Vass Dep. at 49–50.) In the absence of more evidence, this Court is compelled to grant summary judgment for Riester on Count VI. *See Ang v. Procter & Gamble Co.,* 932 F.2d 540, 548 (6th Cir. 1991) (noting that "[w]hen a court is convinced that a plaintiff completely failed to allege circumstances from which discrimination can be inferred, the court need not examine all elements of the *McDonnell Douglas* analysis").[19]

### III. *Conclusion*

For the foregoing reasons, Riester's motion for summary judgment is granted. Judgment will be entered in favor of defendant The Riester & Thesmacher Co. and against plaintiff Laszlo Vass.

IT IS SO ORDERED.

---

19. *See Ohio Civil Rights Commn. v. Ingram,* 69 Ohio St.3d 89, 630 N.E.2d 669, 672 (1994) (holding that federal case law interpreting Title VII is generally applicable to cases brought under the Ohio Revised Code).