**Karen SUMMERS, Plaintiff,**

v.

**MIDDLETON & REUTLINGER, P.S.C., Defendant.**

**No. Civ.A. 3:99CV–85–S.**

United States District Court, W.D. Kentucky, At Louisville.

June 20, 2002.

Jonathan C. Hardy, Priddy, Isenberg, Miller & Meade, Louisville, KY, Kevin S. Kinkade, O'Leary & Associates, Oakland City, IN, Vicki L. Buba, Lise G. Buba–Kruer, Stone, Pregliasco, Haynes & Buba, Louisville, KY, for Plaintiff.

Karen Summers, Louisville, KY, Pro se.

Dorothy M. Pitt, Ayala Golding, Pitt, Fenton & Smith, Louisville, KY, for Defendant.

## MEMORANDUM OPINION

SIMPSON, District Judge.

This matter is before the court on defendant's Motion for Summary Judgment. For the reasons stated below, defendant's motion will be **GRANTED**.

## BACKGROUND

Plaintiff worked for defendant as a legal secretary from October, 1982 until January, 1997. In 1985 she was assigned to work for Jim Higgins ("Higgins"), the head of defendant's intellectual property group. Her work for Higgins required her to work overtime and perform duties she felt were more suited to a paralegal than a legal secretary.

In October, 1995 plaintiff received an "average" performance evaluation in which Higgins cited her reluctance to learn de-

fendant's new computer system. (Def.Mot.SummJ.Exh.1). Higgins also noted that her personal responsibilities were affecting her work performance. *Id.* However, the next year's evaluation cited a significant improvement in her computer skills. (Def.Mot.Summ.J.Exh.3).

On October 18, 1996, plaintiff informed her office manager, Nancy Kasey ("Kasey") that she needed two or three days off due to stress. Two days later she requested two weeks off and provided a note from her doctor that read she should not work for two weeks. (Def.Mot.Summ.J.Exh.5) On October 31, 1996 she provided a second note from her doctor that read she should remain off work indefinitely. (Def.Mot.Summ.J.Exh.6).

On December 2, 1996 plaintiff informed Kasey that she wished to return to work on December 9 and could obtain a medical release to do so. She met with Kasey and defendant's managing partner Kenneth Handmaker ("Handmaker") on December 6, 1996. Handmaker informed plaintiff she would no longer work for Higgins because "[defendant] realized he was the source of [her] stress." (Pltf. 9/22/99 Dep. at 239). He offered to assign her to two associate attorneys because it "would be less stressful." *Id.* at 246. Her salary and benefits were to remain the same. Plaintiff became upset because she "wanted the choice of saying it wouldn't work" with Higgins. *Id.* at 239–40. She told them she would think about whether she wanted to accept the offered position. *Id.* at 246.

In January, plaintiff told Kasey she could come back to work if "[defendant could] accommodate [her] not doing paralegal work and temporarily working no more than 40 hours at this time." (Pltf. 2/23/00 Dep. at 335). She also said she did not feel the offered position would be less stressful than her position with Higgins.

(Pltf. 9/22/99 Dep. at 257–58). She then requested that her leave be extended while she waited for vocational rehabilitation test results. *Id.* at 258–59. However, she felt that she and defendant "were at an impasse." *Id.* at 273.

On January 15, 1997 plaintiff received a letter from defendant stating her "refusal to accept the equivalent position and to return to work is tantamount to voluntary termination of your employment, i.e., a voluntary resignation." (Def.Mem.Summ.J.Exh.10). The letter also stated her leave was presumed to have been taken under the Family and Medical Leave Act ("FMLA") and had exceeded the twelve week entitlement. *See id.*

Plaintiff subsequently filed a complaint with the Equal Employment Opportunity Commission claiming defendant had discriminated against her due to a learning disability in violation of the American with Disabilities Acts ("ADA"). (Def.Mem.Summ.J.Exh.11). However, the complaint was dismissed because the information the EEOC obtained did not establish an ADA violation. (Def.Mot.Summ.J.Exh.14). Plaintiff consequently filed suit in Jefferson Circuit Court, Jefferson County, Kentucky claiming disability discrimination in violation of the Kentucky Civil Rights Act ("KCRA"), KRS 344.010 *et seq.*, and violation of the FMLA, 29 U.S.C. § 2601 *et seq.* The action was subsequently removed to this court and defendant now requests summary judgment on all plaintiff's claims.

## DISCUSSION

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a

judgment as a matter of law." Fᴇᴅ. R.Cɪᴠ.P. 56(c); *see. Canderm Pharmacal, Ltd. v. Elder Pharmaceuticals, Inc.,* 862 F.2d 597, 601 (6th Cir.1988). The party moving for summary judgment bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

However, the moving party's burden may be discharged by demonstrating that there is an absence of evidence to support an essential element of the nonmoving party's case for which he has the burden of proof. *Id.* at 323, 106 S.Ct. at 2552. Once the moving party demonstrates this lack of evidence, the burden passes to the nonmoving party to establish, after an adequate opportunity for discovery, the existence of a disputed factual element essential to his case with respect to which he bears the burden of proof. *Id.* If the record taken as a whole could not lead the trier of fact to find for the nonmoving party, the motion for summary judgment should be granted. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)

### I. *Plaintiff's KCRA Claim*

■ The KCRA's disability discrimination provisions "track[ ] the federal law and should be interpreted consonant with federal interpretation." *Meyers v. Chapman Printing Co., Inc.,* 840 S.W.2d 814 (Ky.1992). Thus, to establish a *prima facie* case plaintiff must show 1) she is disabled; 2) she is otherwise qualified for the position, with or without reasonable accommodation; 3) she suffered an adverse employment decision. *See Henderson v. Ardco, Inc.,* 247 F.3d 645, 649 (6th Cir. 2001) (citing *Monette v. Electronic Data Systems Corp.,* 90 F.3d 1173, 1178 (6th Cir.1996)).

■ Defendant first argues it did not know or have reason to know of plaintiff's claimed learning disability. However, plaintiff testified that she informed Kasey and several co-workers of a suspected learning disability and she requested time off to have neurological tests performed. (Pltf. 2/23/00 Dep. at 310, 472–74); (Pltf. 9/22/99 Dep. at 264–65). There is thus a genuine issue of material fact and summary judgment is improper on this basis.

■ Defendant next argues plaintiff has not established she has a disability protected under the KCRA. We agree. A "disability" is 1) a physical or mental impairment that substantially limits one or more major life activities; 2) a record of such impairment; or, 3) being regarded as having such an impairment. *See Martin v. Barnesville Sch. Dist. Bd. of Educ.,* 209 F.3d 931, 934 (6th Cir.2000) (citing 42 U.S.C. § 12102(2)). Plaintiff has not shown she is substantially limited in any major life activity and therefore cannot be considered "disabled" under the KCRA.

■ Plaintiff claims her disability substantially limits her ability to perform the major life activity of working. She therefore must show she "is significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." 29 C.F.R. § 1630.2(j)(3)(i) (quoted in *Vass v. Riester & Thesmacher Co.,* 79 F.Supp.2d 853, 860 (N.D.Ohio 2000)). "[I]t is not enough that an impairment interferes with an individual's ability to do a particular job when it did not otherwise significantly decrease that individual's ability to obtain satisfactory employment." *Jasany v. United States Postal Svc.,* 755 F.2d 1244, 1248 (6th Cir.1985). Plaintiff has obtained employment as a legal receptionist/secretary. (Pltf. 2/23/00

Dep. at 428–29). There is no evidence of any difficulty in obtaining or performing her current job. Further, it is not clear that her alleged disability even interfered with her ability to perform her job with defendant as she received a satisfactory performance evaluation and a raise in salary shortly before taking her leave of absence. (Def.Mem.Summ.J.Exhs.3, 4). Finally, the only limitations plaintiff claims are inabilities to work overtime or perform what she deems "paralegal work." It is well established that the inability to work overtime is not a substantial limitation on the major life activity of working. *See, e.g., Boerst v. General Mills Operations, Inc.,* 25 Fed.Appx. 403, 407 (6th Cir.2002); *Kellogg v. Union Pacific R. Co.,* 233 F.3d 1083, 1087 (8th Cir.2000); *Tardie v. Rehabilitation Hosp. of Rhode Island,* 168 F.3d 538, 542 (1st Cir.1999). Plaintiff also claims she is substantially limited in the major life activity of learning. The only support she offers for this claim is an alleged difficulty with learning defendant's computer system. However, "[t]he mere fact that [plaintiff] was having obvious difficulty in [computer training] does not show that she was substantially limited in the major life activity of learning, any more than the fact that a particular individual might not be able to pass a course in physics or philosophy would allow an inference that all learning activity was substantially limited." *Leisen v. City of Shelbyville,* 153 F.3d 805, 808 (7th Cir.1998). Further, her October, 1996 performance evaluation noted "her computer skills have improved significantly, and she keeps learning new and productive techniques to help us all do better." (Def.Mem.Summ.J.Exh.3). Additionally, her own testimony reveals she successfully completed computer training for her current job. (Pltf. 2/23/00 Dep. at 428). Finally, her recent neuropsychological report reads that "[b]y [plaintiff's] account, there have been no complaints regarding her ability to learn tasks and routines of [her] new work environment. . . . This would appear to demonstrate that [plaintiff] is capable of performing the 'essential functions' of a legal secretary when in an environment of reduced pressure to learn and function." (Def.Mem.Summ.J.Exh.18).

■ Plaintiff argues that defendant regarded her as having a substantially limiting impairment because she was initially placed on short term disability leave. However, defendant's offer of paid medical leave does not establish it regarded plaintiff as disabled. *See Keith v. Ashland, Inc.,* 2000 WL 178389, *3, 205 F.3d 1340 (6th Cir.2000) (citing *Crandall v. Paralyzed Veterans of America,* 146 F.3d 894, 898 (D.C.Cir.1998); *Cody v. CIGNA Healthcare,* 139 F.3d 595, 599 (8th Cir. 1998); *Kocsis v. Multi–Care Management, Inc.,* 97 F.3d 876, 883 (6th Cir.1996)). Plaintiff also argues she was regarded as disabled because defendant made efforts to accommodate her by offering an alternative position. Again, however, the mere fact that defendant was aware that working for Higgins caused plaintiff stress and attempted to relieve that stress does not necessarily mean defendant regarded her as having a substantially limiting impairment. *See id.* ("To hold that an employer perceives a troubled employee disabled under the ADA by making an offer to accommodate such an employee 'would unnecessarily inhibit employers from any inquiry regarding the status of behavior on the part of an employee that an employer may perceive as inappropriate for the employment environment.' ") (quoting *Kvintus v. R.L. Polk & Co.,* 3 F.Supp.2d 788, 796 (E.D.Mich.1998)). Plaintiff has therefore failed to establish she is disabled under the KCRA and defendant's motion for summary judgment will accordingly be granted.

## II. *Plaintiff's FMLA Claim*

Plaintiff claims defendant violated the FMLA by retroactively designating her leave as FMLA leave. Thus, according to plaintiff, she was improperly terminated for exceeding the FMLA's twelve week leave entitlement because "only that portion of the leave following notification by the employer may be designated as FMLA leave and counted against the twelve week entitlement." *Plant v. Morton International, Inc.*, 212 F.3d 929, 935 (6th Cir.2000) (quoted in Pltf. Mem.Opp.Summ.J. at 31). However, the United States Supreme Court recently invalidated the basis for plaintiff's argument. *See Ragsdale v. Wolverine World Wide, Inc.*, —— U.S. ——, 122 S.Ct. 1155, 152 L.Ed.2d 167 (2002) (finding 29 C.F.R. 825.700(a), which provides in pertinent part that "[i]f an employee takes paid or unpaid leave and the employer does not designate the leave as FMLA leave, the leave taken does not count against an employee's FMLA entitlement," beyond the Secretary of Labor's authority.). The Court found invalidating leave taken prior to notice that it is under the FMLA "is incompatible with the FMLA's comprehensive remedial mechanism" because "[t]o prevail under the cause of action set out in [29 U.S.C.] § 2617,[1] an employee must prove ... that the employer ... interfer[ed] with, restrain[ed] or den[ied] his or her exercise of FMLA rights. Even then § 2617 provides no relief unless the employee has been prejudiced by the violation...." *Id.* at 1161. Therefore, plaintiff cannot merely rely on the fact that defendant designated her FMLA leave retrospectively, she must demonstrate her rights under the FMLA were violated and she was harmed as a result. *See id.* at 1162.

Plaintiff has presented no evidence of prejudice resulting from defendant's retroactive FMLA leave designation. In fact, she testified she did not feel she was ready to perform legal secretarial work as late as January, 1998. (Pltf. 2/23/00 Dep. at 415–16). Thus, even if defendant had granted her twelve additional weeks of leave, she would not have been capable of returning to work at that time. She therefore cannot claim any prejudice resulted from defendant deeming her FMLA leave expired on January 15, 1997. *See Hicks v. Leroy's*

---

1. 29 U.S.C. § 2617 provides in pertinent part:

   (a) Civil action by employees
   (1) Liability
   Any employer who violates section 2615 of this title shall be liable to any eligible employee affected—
   (A) for damages equal to—
   (i) the amount of—

   (I) any wages, salary, employment benefits, or other compensation denied or lost to such employee by reason of the violation; or

   (II) in a case in which wages, salary, employment benefits, or other compensation have not been denied or lost to the employee, any actual monetary losses sustained by the employee as a direct result of the violation, such as the cost of providing care, up to a sum equal to 12 weeks of wages or salary for the employee;

   (ii) the interest on the amount described in clause (i) calculated at the prevailing rate; and

   (iii) an additional amount as liquidated damages equal to the sum of the amount described in clause (i) and the interest described in clause (ii), except that if an employer who has violated section 2615 of this title proves to the satisfaction of the court that the act or omission which violated section 2615 of this title was in good faith and that the employer had reasonable grounds for believing that the act or omission was not a violation of section 2615 of this title, such court may, in the discretion of the court, reduce the amount of the liability to the amount and interest determined under clauses (i) and (ii), respectively; and

   (B) for such equitable relief as may be appropriate, including employment, reinstatement, and promotion.

*Jewelers, Inc.*, 2000 WL 1033029, *3, 225 F.3d 659 (6th Cir.2000) (finding defendant's placing plaintiff on FMLA leave involuntarily did not violate the FMLA because "[plaintiff's] failure to return to work within 12 weeks even of her proposed leave date precludes recovery under the FMLA."). Defendant's Motion for Summary Judgment will accordingly be granted.

### CONCLUSION

For the reasons stated above, defendant's Motion for Summary Judgment will be granted.

### ORDER

For the reasons set forth in the Memorandum Opinion entered this date and the Court being otherwise sufficiently advised, **IT IS HEREBY ORDERED** that defendant's Motion for Summary Judgment is **GRANTED.** The Complaint is dismissed with prejudice.